**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| UNITED STATES ex rel. UNDER SEAL,<br>Plaintiff[s],<br><br>v.<br><br>UNDER SEAL,<br>Defendant[s]. | Civil Action No.<br><br>JURY TRIAL DEMANDED<br><br>FILED IN CAMERA AND UNDER SEAL PURSUANT TO 31 U.S.C. § 3730 |

**FALSE CLAIMS ACT COMPLAINT**

**DO NOT ENTER ON PACER OR OTHERWISE PLACE ON THE PUBLIC DOCKET**

CLERK
U.S. DISTRICT COURT
DISTRICT OF NEW JERSEY

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| UNITED STATES OF AMERICA ex rel. BLACK ARROW STRATEGIES LLC,<br><br>Plaintiff/Relator,<br><br>v.<br><br>RAMSEY GOLF AND COUNTRY CLUB, INC.,<br><br>Defendant. | Civil Action No.<br><br>JURY TRIAL DEMANDED<br><br>FILED IN CAMERA AND UNDER SEAL PURSUANT TO 31 U.S.C. § 3730 |

**COMPLAINT FOR VIOLATIONS OF THE FALSE CLAIMS ACT WITH JURY TRIAL DEMAND**

Black Arrow Strategies LLC ("Relator"), as relator on behalf of the United States of America, brings this action against Ramsey Golf and Country Club, Inc. ("Defendant") under the qui tam provisions of the False Claims Act, 31 U.S.C. § 3729 *et seq.*, and alleges as follows:

## I. NATURE OF THE ACTION

1. This is a qui tam case, filed on behalf of the United States of America, seeking to recover approximately $3,925,424.70 in treble damages, plus civil penalties, from Ramsey Golf and Country Club, Inc.

2. Defendant wrongfully obtained two federally guaranteed Paycheck Protection Program ("PPP") loans for which it was categorically ineligible under 13 C.F.R. § 120.110(i). Private clubs and businesses that limit the number of memberships for reasons other than capacity are ineligible for SBA business loans, including PPP loans. Defendant nevertheless certified eligibility, received PPP first-draw Loan No. 7638107110 in the amount of $606,445 and PPP second-draw Loan No. 9671538510 in the amount of $645,900, and later obtained forgiveness totaling $1,270,944.55, causing actual damages of approximately $1,308,474.90 and treble damages of approximately $3,925,424.70.

3. Congress created the Paycheck Protection Program in 2020 as part of the Coronavirus Aid, Relief, and Economic Security Act ("the CARES Act") to provide economic relief to eligible small businesses during the COVID-19 pandemic. Pub. L. No. 116-136, 134 Stat. 281 (2020) (codified as amended at 15 U.S.C. § 636(a)(36)).

4. Businesses "which limit the number of memberships for reasons other than capacity" are not (and have never been) eligible to receive PPP funds, because they are generally ineligible for SBA business loans. *See* 13 C.F.R. § 120.110(i). The Small Business Administration's interim PPP rules for the first-draw PPP loans made clear that the prohibitions contained in 13 C.F.R. § 120.110(i) still applied. *See* 85 Fed. Reg. 20811, 20812 (Apr. 15, 2020) ("Businesses that are not eligible for PPP loans are identified in 13 CFR 120.110[,] … except that nonprofit organizations authorized under the Act are eligible.").

5. When Congress authorized second-draw PPP loans in the Economic Aid to Hard-Hit Small Businesses, Nonprofits, and Venues Act, it codified that program at 15 U.S.C. § 636(a)(37). SBA's Second Draw interim final rule further provided that an applicant was not eligible for a Second Draw PPP loan if it was "[e]xcluded from eligibility under the Consolidated First Draw PPP IFR." 86 Fed. Reg. 3712, 3719 (Jan. 14, 2021).

6. Since private clubs and businesses which limit the number of memberships for reasons other than capacity are classified under paragraph (i) of 13 C.F.R. §120.110, such businesses were ineligible for both first- and second-draw PPP loans.

7. Had Ramsey Golf and Country Club, Inc. not falsely certified eligibility in its borrower application and again in its forgiveness submission, it would not have received the loan or the forgiveness.

## II. JURISDICTION AND VENUE

8. This Court has subject-matter jurisdiction under 28 U.S.C. § 1331 because this action seeks to redress violations of the False Claims Act, 31 U.S.C. § 3729 *et seq.*, and therefore arises under the laws of the United States. This Court also has subject-matter jurisdiction under 28 U.S.C. § 1345 because this action is brought in the name of the United States, and the real party in interest to the claims in this action is the United States.

9. This Court has personal jurisdiction over Defendant because Ramsey Golf and Country Club, Inc. is a New Jersey for-profit corporation operating a private golf and country club in Ramsey, Bergen County, New Jersey. *See*, e.g., *United States ex rel. Miller v. Reckitt Benckiser Grp. PLC*, 698 F. Supp. 3d 889, 905 (W.D. Va. 2023) (explaining that because the False Claims Act "contains a broad jurisdictional provision that permits nationwide service," personal jurisdiction hinges on minimum contacts with the United States as a whole); 31 U.S.C. § 3732(a).

10. Venue is proper in this District because Defendant can be found, resides, and transacts business within this District. 31 U.S.C. § 3732(a). Alternatively, venue is proper because a substantial part of the events or omissions giving rise to the claim occurred within this District. 28 U.S.C. § 1391(b)(2).

## III. PARTIES

11. The "real party in interest" to the claims in this action is the United States of America. *See United States ex rel. Eisenstein v. City of N.Y.*, 556 U.S. 928, 930 (2009).

12. Relator Black Arrow Strategies LLC is a company specializing in the investigation of misconduct and fraud relating to government contracts.

13. Defendant Ramsey Golf and Country Club, Inc. is a New Jersey for-profit corporation operating a private golf and country club with its principal place of business in Ramsey, New Jersey.

## IV. DISCLOSURES

14. As required by 31 U.S.C. § 3730(b)(2), Relator will submit an Original Disclosure Statement to the Attorney General of the United States and to the United States Attorney for the District of New Jersey, together with all material evidence and information in Relator's possession, subsequent to filing and serving this Original Complaint.

## V. THE FALSE CLAIMS ACT

15. The False Claims Act is the primary civil remedial statute designed to deter fraud upon the United States. Its purpose is to "enhance the Government's ability to recover losses sustained as a result of fraud against the Government." S. Rep. No. 99-345 (1986), as reprinted in 1986 U.S.C.C.A.N. 5266, 5266.

16. Any individual or entity may bring violations of the False Claims Act to the government's attention by filing suit as a relator on behalf of the United States. 31 U.S.C. §3730(b)(1). This includes companies that specialize in investigating and reporting fraud, which have been recognized by the Department of Justice as valuable partners in its fight against the misuse of public funds. *See, e.g.*, Press Release, U.S. Dep't of Justice, U.S. Att'y Off., D. Az., *Country Club to Pay Over $630,000 to Resolve False Claims Act Allegations Relating to Improper Receipt of Paycheck Protection Program Loan* (Nov. 13, 2024), https://perma.cc/UGX9-V2WF; Press Release, U.S. Dep't of Justice, U.S. Att'y Off., S.D. Cal., *Nonprofit Organizations Pay Over $5.8 Million to Resolve Allegations of Fraudulently Obtaining Pandemic-Related Loans* (June 12, 2024), https://perma.cc/L6V2-YCBR.

17. An entity or person violates the FCA when that entity or person "knowingly presents, or causes to be presented, a false or fraudulent claim for payment or approval." 31 U.S.C. § 3729(a)(1)(A).

18. Under the FCA, a claim includes "any request or demand … for money" that is "presented to an officer, employee, or agent of the United States." *Id.* §3729(b)(2). A claim is "false or fraudulent" under the FCA if the entity or person submitting the claim was not entitled to payment and the "misrepresentation about compliance" was "material to the Government's payment decision." *Universal Health Servs., Inc. v. United States ex rel. Escobar*, 579 U.S. 176, 192 (2016).

19. In 2009, Congress amended the FCA to also make an entity or person liable if that entity or person "knowingly makes, uses, or causes to be made or used, a false record or statement material to a false or fraudulent claim." Fraud Enforcement & Recovery Act of 2009, Pub. L. No. 111-21, 123 Stat. 1617, 1621 (2009) (codified at 31 U.S.C. §3729(a)(1)(B)).

20. Under the FCA, the terms "knowing" and "knowingly" mean that the defendant either "(i) has actual knowledge of the information; (ii) acts in deliberate ignorance of the truth or falsity of the information; or (iii) acts in reckless disregard of the truth or falsity of the information." 31 U.S.C. §3729(b)(1)(A)(i-iii). When words indicating knowledge—like "know," "knowledge," "knowingly," or words of similar import—are used in this complaint, they mean "knowingly" as defined in the FCA.

21. No "proof of specific intent to defraud" the Government is required to show that a defendant acted knowingly under the FCA. *Id.* §3729(b)(1)(B).

22. The FCA defines the term "material" as "having a natural tendency to influence, or be capable of influencing, the payment or receipt of money or property." *Id.* §3729(b)(4).

23. The FCA imposes treble damages plus a civil penalty for each violation of the statute. *Id.* §3729(a)(1)(G); 28 C.F.R. §85.5(a), tbl. 1 (inflation-adjusted penalty amounts).

24. As of the date this complaint is filed, courts must assess a civil penalty in the inflation-adjusted range then applicable under 31 U.S.C. § 3729(a)(1), 28 C.F.R. § 85.5(a), tbl. 1, and the Civil Monetary Penalty Inflation Adjustments notice in effect at the time of judgment.

25. False statements made in a loan application to a third-party lender qualify as "false claims" to the government where, as here, the loan is guaranteed by the federal government and the federal government later repays the lender. *See United States v. Van Oosterhout*, 96 F.3d 1491, 1494 (D.C. Cir. 1996).

## VI. CERTAIN PRIVATE CLUBS AND BUSINESSES WERE INELIGIBLE FOR PPP LOANS

26. The PPP was established by the CARES Act to provide forgivable loans to eligible small businesses affected by the COVID-19 pandemic. 15 U.S.C. § 636(a)(36).

27. The SBA administered the PPP through federally insured banks and other lenders, with loans 100% guaranteed by the federal government. 15 U.S.C. § 636(a)(2)(F).

28. From the program's inception, the SBA's regulations at 13 C.F.R. §120.110 specified categories of businesses ineligible for SBA business loans, including PPP loans.

29. Among these ineligible categories, 13 C.F.R. § 120.110(i) expressly excluded "private clubs and businesses which limit the number of memberships for reasons other than capacity."

30. The SBA's Interim Final Rule for administration of first-draw PPP loans confirmed that businesses ineligible under 13 C.F.R. § 120.110 remained ineligible for PPP loans unless the CARES Act specifically stated otherwise. 85 Fed. Reg. 20811, 20812 (Apr. 15, 2020) ("Businesses that are not eligible for PPP loans are identified in 13 CFR 120.110.").

31. Congress later authorized second-draw PPP loans in the Economic Aid to Hard-Hit Small Businesses, Nonprofits, and Venues Act, codified at 15 U.S.C. § 636(a)(37). SBA's Second

Draw PPP interim final rule then provided that an applicant was not eligible for a Second Draw PPP loan if the applicant was excluded from eligibility under the Consolidated First Draw PPP interim final rule. 86 Fed. Reg. 3692, 3698 (Jan. 14, 2021).

32. The SBA's Interim Final Rule for second-draw loans reiterated this continuing prohibition against private clubs that restrict membership for reasons other than capacity: "Paragraphs (a), (g), and (k), of 13 CFR 120.110 do not apply to PPP loans.... Otherwise, a business is not eligible for a PPP loan if it is a type of business concern (or would be, if the entity were a business concern) described in 13 CFR 120.110." 86 Fed. Reg. 3692, 3698 (Jan. 14, 2021).

33. Thus, the CARES Act—for first-draw PPP loans—did not create an exception to 13 C.F.R. § 120.110(i)'s prohibition on loans to private clubs and businesses that restrict membership for reasons other than capacity. And while the American Rescue Plan expanded PPP eligibility—for second-draw PPP loans—to some nonprofit organizations, the statute explicitly stated that the prohibitions in 13 C.F.R. § 120.110(i) remained in effect.

34. The Department of Justice has demonstrated its commitment to pursuing PPP fraud cases involving private clubs and businesses which limit membership for reasons other than capacity. The Department of Justice has resolved False Claims Act cases against the University Club of Milwaukee, an Arizona country club, and a network of entities operating a private, invitation-only members club based in New York City. *See* Press Release, U.S. Dep't of Justice, U.S. Att'y Off., E.D. Wis., *University Club of Milwaukee Agrees to Pay Over $1 Million to Resolve Claim that It Wrongfully Obtained Paycheck Protection Program Loan* (Dec. 13, 2024), https://perma.cc/96J6-TE2Q; Press Release, U.S. Dep't of Justice, U.S. Att'y Off., D. Ariz., *Country Club to Pay Over $630,000 to Resolve False Claims Act Allegations Relating to Improper Receipt of Paycheck Protection Program Loan* (Nov. 13, 2024), https://perma.cc/RD6H-FT52;

Press Release, U.S. Dep't of Justice, U.S. Att'y Off., S.D.N.Y., *U.S. Attorney Announces Settlement With Members-Only Social Club For Covid Relief Fraud* (Aug. 13, 2025), https://perma.cc/U5H9-UJVV.

## VII. FACTUAL ALLEGATIONS

### A. Defendant was categorically ineligible for a PPP loan because it limited membership or patronage for reasons other than capacity.

35. Ramsey Golf and Country Club, Inc. is a private membership corporation that limits membership for multiple reasons unrelated to physical capacity. Membership is available only to homeowners within a bounded 550-home residential development and a capped number of outside dues paying members; requires acceptance of a share of stock tied to property title; operates under the supervision of the Board of Directors; and restricts all sporting activities to private members only. These interlocking restrictions mean that a person cannot access the club's primary amenities unless that person first purchases a home within the development or pays an expensive initiation fee and monthly dues to be a member. None of these restrictions are related to the club's physical capacity to serve additional members.

36. Ramsey Golf and Country Club, Inc. is a New Jersey for-profit corporation, incorporated June 15, 1940, operating a private membership golf and country club at 105 Lakeside Drive in Ramsey, Bergen County, New Jersey. The club describes itself as "a membership corporation" that provides "resident and associate members the opportunity to participate in social, dining and recreational activities" whose staff operates "under the guidance and supervision of the respective committees and Board of Directors." *See Membership Categories*, Ramsey Golf and Country Club, https://ramseycountryclub.com/membership. The club's website states that "the privileges of our sporting activities are by private membership only[.]" *Our Story*, Ramsey Golf and Country Club, https://ramseycountryclub.com/about/story. In a 2016 article, the club's then-

General Manager Aurelian Anghelusiu confirmed this two-tier structure: "While the catering and restaurants are open to the public year round, the golf, pool and paddle are private, and the 560 resident members who live inside the club have access to them should they choose. An additional, limited number of associate members live outside the club." Special to NJ.com, *Ramsey Golf & Country Club Offers Life the Way You Like*, NJ.com (June 23, 2016), https://www.nj.com/ramsey_golf_and_country_club/2016/06/ramsey_golf_country_club_offer.html.

37. **Homeownership restriction on membership.** The club limits resident membership to owners of approximately 550 homes within a geographically bounded residential development. The club's website confirms that "annual membership is mandatory" for homeowners in the community, including "fees for monthly dues, capital assessments, and quarterly food and beverage requirements." *See Membership Categories*, Ramsey Golf and Country Club, https://ramseycountryclub.com/membership. The New Jersey State Golf Association records the development's origin: "In 1940, the DeWyckoff Estate was sold to the National House & Farms Association for residential development" and "[e]ach purchaser agreed to abide by the rules of Club by accepting title and was issued a share of stock, a practice that is still in effect today." *Ramsey G. and C.C.*, New Jersey State Golf Association, https://njsga.org/courses/ramsey-golf-and-country-club. This 550-home cap limits membership not because the club's facilities cannot serve additional members, but because membership is tied to a finite, geographically bounded housing stock. A person who lives one street outside the development boundary cannot join as a resident member regardless of whether the club has physical capacity for additional members.

38. **Stock-ownership requirement.** Based on information and belief, membership at the club requires ownership of a share of stock, a model in place since the club's founding in 1940 and confirmed "still in effect today." *Id.* On April 2, 2020—twelve days before the first PPP loan was approved—the club published its "75th Annual Stockholders' Meeting" presentation covering a meeting held March 28, 2020, addressing its members as "Stockholders." Ramsey Golf & Country Club, *2020 Shareholder's Presentation on 2019*, Issuu (published Apr. 2, 2020), https://issuu.com/ramseygolfcountryclub/docs/2020_shareholder_presentation_on_2019_v-10. The title itself confirms the stock-ownership membership model was active at the moment the club applied for PPP funds. A share-of-stock requirement is a financial and legal restriction to membership, not a measure of physical capacity; the club's membership is bounded by its capital structure, not by its facility size.

39. **Board of Directors supervision.** The club's membership page states that resident membership and sporting activities operate "under the guidance and supervision of the respective committees and Board of Directors." *See Membership Categories*, Ramsey Golf and Country Club, https://ramseycountryclub.com/membership. A third-party real estate buyer's guide advises prospective homebuyers to "ask whether there's a waiting list or board approval requirement that could impact your move-in timeline" and to "secure any required approvals before closing on the property." *Living in Ramsey Golf and Country Club Homes: What to Know*, mybergenhouse.com, https://mybergenhouse.com/blog/what-to-know-about-living-in-ramsey-golf-and-country-club. On information and belief, the Board exercises discretion over membership applications, a subjective screening gate unrelated to physical capacity.

40. **Members-only patronage for sporting activities.** The club restricts access to all sporting activities—golf, pool, and platform tennis—to private members only. The club's 2017

Real Estate Brochure advertises "private golf, private pool and private paddle tennis" and "EXCLUSIVE MEMBER ONLY EVENTS." Ramsey Golf and Country Club, *Resident Membership Information* (2017), https://www.ramseycountryclub.com/files/2017%20Real%20Estate%20Brochure.pdf. Members-only patronage for a club's primary amenities is a hallmark of the "private clubs" that § 120.110(i) targets: the club's core services are available only to those who can gain membership, which in turn requires home ownership in the bounded development, stock ownership, and satisfaction of governance requirements.

41. These restrictions were in place at the time of both PPP loan applications. The 75th Annual Stockholders' Meeting presentation, published April 2, 2020, documents the stock-ownership membership model twelve days before the first-draw loan was approved on April 14, 2020. *See* Ramsey Golf & Country Club, *2020 Shareholder's Presentation on 2019*, Issuu (published Apr. 2, 2020), https://issuu.com/ramseygolfcountryclub/docs/2020_shareholder_presentation_on_2019_v-10. The club's "Ramsey Memories" community-history publication, published on Issuu on February 3, 2021, confirms the club's identity as a private membership "family club" approximately five weeks before the second-draw loan was approved on March 12, 2021. *See* Ramsey Golf & Country Club, *Ramsey Memories*, Issuu (published Feb. 3, 2021), https://issuu.com/ramseygolfcountryclub/docs/ramsey_memories. A Keller Williams real estate listing for a property in the Ramsey Golf and Country Club development bears the notation "memb. req."—standard abbreviation for "membership required"—and was active throughout the PPP loan period (2020–2021). *See 305 Canterbury Drive, Ramsey, NJ 07446*, Keller Williams, https://consumer-prod.kw.com/property/305-Canterbury-Drive-Ramsey-NJ-07446/18594124.

The club's 2017 Real Estate Brochure, still hosted on its website, describes the development's "private club environment" and confirms the members-only sporting amenities in a document pre-dating both draws. *See* Ramsey Golf and Country Club, *Resident Membership Information* (2017), https://www.ramseycountryclub.com/files/2017%20Real%20Estate%20Brochure.pdf. No evidence suggests that any of these restrictions was suspended, modified, or lifted at any point during the PPP period.

42. Each of these restrictions—mandatory membership tied to a bounded 550-home residential development, a share-of-stock ownership requirement, Board of Directors supervision, and members-only patronage for sporting activities—makes Ramsey Golf and Country Club, Inc. a "private club[]" or "business[] which limit[s] the number of memberships for reasons other than capacity." *See* 13 C.F.R. §120.110(i). Ramsey Golf and Country Club, Inc. was categorically ineligible to take PPP loans.

**B. Defendant applied for, received, and later sought forgiveness of PPP funds despite its ineligibility.**

43. Because Defendant limited membership or patronage for reasons other than capacity, it was categorically ineligible to receive PPP funds under 13 C.F.R. § 120.110(i).

44. Despite that categorical ineligibility, Defendant applied for and received first-draw PPP Loan No. 7638107110 in the amount of $606,445 on or about April 14, 2020, through TD Bank, National Association. Defendant later applied for and received forgiveness of the first-draw loan on or before March 17, 2022, in the amount of $618,199.07. The federal government paid the bank a processing fee of $18,193.35 for the first-draw loan.

45. Defendant then applied for and received second-draw PPP Loan No. 9671538510 in the amount of $645,900 on or about March 12, 2021, through TD Bank, National Association. Defendant later applied for and received forgiveness of the second-draw loan on or before April

7, 2022, in the amount of $652,825.48. The federal government paid the bank a processing fee of $19,377 for the second-draw loan.

46. To obtain the first-draw PPP loan, Ramsey Golf and Country Club, Inc. was required to certify eligibility on the PPP Borrower Application Form, SBA Form 2483 (or a variation of this form containing the same required certifications).

47. That form required a certification that: "The Applicant is eligible to receive a loan under the rules in effect at the time this application is submitted that have been issued by the Small Business Administration (SBA) implementing the Paycheck Protection Program under Division A, Title I of the Coronavirus Aid, Relief, and Economic Security Act (CARES Act) (the Paycheck Protection Program Rule)." *See* PPP Borrower Application Form, SBA Form 2483, at 2, https://perma.cc/N8QV-X93W.

48. To obtain the second-draw PPP loan, Ramsey Golf and Country Club, Inc. had to certify its continuing eligibility on the PPP Second Draw Borrower Application Form, SBA Form 2483-SD (or a variation of this form containing the same required certifications).

49. This form required certification that: "The Applicant is eligible to receive a loan under the rules in effect at the time this application is submitted that have been issued by the Small Business Administration (SBA) and the Department of the Treasury (Treasury) implementing Second Draw Paycheck Protection Program Loans under Division A, Title I of the Coronavirus Aid, Relief, and Economic Security Act (CARES Act), the Economic Aid to Hard-Hit Small Businesses, Nonprofits, and Venues Act, and Title V of the American Rescue Plan Act of 2021 (the Paycheck Protection Program Rules)." *See* PPP Second Draw Borrower Application Form, SBA Form 2483-SD, at 3, https://perma.cc/9Q9Y-Q96U.

50. Since Ramsey Golf and Country Club, Inc. was categorically ineligible to receive PPP loans, these certifications were false.

51. To later obtain forgiveness of the PPP loans, Ramsey Golf and Country Club, Inc. was required to submit a PPP Loan Forgiveness Application Form, using either SBA Form 3508 or SBA Form 3508EZ.

52. These forms required a certification that Ramsey Golf and Country Club, Inc. "understand that if the funds were knowingly used for unauthorized purposes, the federal government may pursue recovery of loan amounts and/or civil or criminal fraud charges." *See, e.g.*, PPP Loan Forgiveness Application Form, SBA Form 3508, at 2, https://perma.cc/K9KJ-7STJ.

53. These forms also reiterated that: "The Borrower's eligibility for loan forgiveness will be evaluated in accordance with the PPP regulations and guidance issued by SBA through the date of this application." *See, e.g., id.* at 3.

54. By submitting PPP loan applications and subsequent loan-forgiveness applications, Ramsey Golf and Country Club, Inc. falsely certified that it was eligible for PPP loans and loan forgiveness, even though Ramsey Golf and Country Club, Inc. was categorically ineligible for these loans and for loan forgiveness.

## COUNT ONE

### Presenting False Claims for Payment
### 31 U.S.C. § 3729(a)(1)(A)

55. Relator realleges and incorporates by reference the allegations contained in the foregoing paragraphs as though fully set forth herein.

56. Defendant knowingly presented or caused to be presented false or fraudulent claims for payment or approval to the United States Government for a PPP loan and for forgiveness of that PPP loan, in violation of 31 U.S.C. § 3729(a)(1)(A).

57. Specifically, each of the following application and forgiveness submissions was a "claim" presented to the United States (through SBA or its agents), and each was false because Defendant was categorically ineligible for PPP funds yet certified otherwise.

58. For Ramsey Golf and Country Club, Inc.:

a. *First-Draw Loan Application:* On or about April 14, 2020, Ramsey Golf and Country Club, Inc. submitted a PPP first-draw loan application and falsely certified its PPP eligibility, despite the continuing applicability of 13 C.F.R. § 120.110(i)'s prohibition against loans to "private clubs and businesses which limit the number of memberships for reasons other than capacity." 13 C.F.R. § 120.110(i); *see* 85 Fed. Reg. 20811, 20812 (Apr. 15, 2020).

b. *First-Draw Loan Forgiveness:* On or before March 17, 2022, Ramsey Golf and Country Club, Inc. submitted a PPP first-draw loan forgiveness application and again falsely certified its compliance and eligibility. The SBA approved forgiveness of the first-draw loan in the amount of $618,119.07.

c. *Second-Draw Loan Application*: On or about March 12, 2021, Ramsey Golf and Country Club, Inc. submitted a PPP second-draw loan application and falsely certified its PPP eligibility, despite the continuing applicability of 13 C.F.R. § 120.110(i)'s prohibition against loans to "private clubs and businesses which limit the number of memberships for reasons other than capacity." 13 C.F.R. § 120.110(i); *see* 15 U.S.C. §636(a)(36)(A)(xvii)(II); 86 Fed. Reg. 3692, 3698 (Jan. 14, 2021).

d. *Second-Draw Loan Forgiveness*: On or before April 7, 2022, Ramsey Golf and Country Club, Inc. submitted a PPP second-draw loan forgiveness application

and again falsely certified its compliance and eligibility. The SBA approved forgiveness of the second-draw loan in the amount of $652,825.48.

59. Each PPP loan application described above was a "claim" under the FCA because it was a "request or demand … for money or property … that" was "presented to an officer, employee, or agent of the United States"—namely, to PPP lenders acting on SBA's behalf—or, alternatively, to a "contractor, grantee, or other recipient" to be reimbursed by the United States. 31 U.S.C. § 3729(b)(2)(A)(i)–(ii).

60. Each PPP forgiveness application described above was likewise an additional "claim" under the FCA because Defendant further "request[ed] or demand[ed]" money or property from the United States through SBA, and forgiveness was conditioned on renewed eligibility and compliance certifications. *Id.* § 3729(b)(2)(A).

61. At the time of the false statements and presentments, Defendant knew these statements were false because it had "actual knowledge of" its ineligibility, "acted in deliberate ignorance of the truth or falsity of" its ineligibility, or "acted in reckless disregard of the truth or falsity of" its ineligibility. *Id.* § 3729(b)(1)(A).

62. The United States—unaware of the material falsity of the claims made or caused to be made by Defendant—approved, paid, and participated in payments made by the United States' agents (PPP lenders) for loans that were not permitted under law and, as applicable, in loan forgiveness that was not permitted under law.

63. Because of these payments, approvals, and/or loan forgiveness, the United States has been damaged in an amount of approximately $1,308,474.90.

| | |
|---|---|
| First-draw loan total amount forgiven (including interest) | $618,119.07 |
| First-draw loan processing fee | $18,193.35 |
| Second-draw loan total amount forgiven (including interest) | $652,825.48 |
| Second-draw loan processing fee | $19,377.00 |

| | |
|---|---|
| **Total actual damages** | **$1,308,474.90** |

64. The United States is entitled to treble damages plus a civil monetary penalty for each false claim. *See* 31 U.S.C. § 3729(a)(1); 28 C.F.R. § 85.5.

## COUNT TWO

### Making or Using False Records or Statements
### 31 U.S.C. § 3729(a)(1)(B)

65. Relator realleges and incorporates by reference the allegations contained in the foregoing paragraphs as though fully set forth herein.

66. Defendant knowingly made, used, or caused to be made or used false records or statements that were material to false or fraudulent claims paid or approved by the United States, in violation of 31 U.S.C. § 3729(a)(1)(B).

67. Specifically, each of the following application and forgiveness submissions included a false statement about eligibility to receive PPP loans and forgiveness of loans, and each was presented to the United States (through SBA or its agents).

68. For Ramsey Golf and Country Club, Inc.:

a. *First-Draw Loan Application:* On or about April 14, 2020, Ramsey Golf and Country Club, Inc. made, used, or caused to be made or used false statements regarding Defendant's eligibility to receive a PPP loan. These statements occurred in Defendant's application for a first-draw PPP loan.

b. *First-Draw Loan Forgiveness:* On or about March 17, 2022, Ramsey Golf and Country Club, Inc. again made, used, or caused to be made or used false statements regarding Defendant's compliance with the rules and requirements governing PPP loan eligibility and usage. These statements occurred in Defendant's application for PPP first-draw loan forgiveness.

c. *Second-Draw Loan Application:* On or about March 12, 2021, Ramsey Golf and Country Club, Inc. made, used, or caused to be made or used false statements regarding Defendant's eligibility to receive a PPP loan. These statements occurred in Defendant's application for a second-draw PPP loan.

d. *Second-Draw Loan Forgiveness:* On or about April 7, 2022, Ramsey Golf and Country Club, Inc. again made, used, or caused to be made or used false statements regarding Defendant's compliance with the rules and requirements governing PPP loan eligibility and usage. These statements occurred in Defendant's application for PPP second-draw loan forgiveness.

69. At the time of the false statements, Defendant knew that these statements were false because Defendant had "actual knowledge of" its ineligibility, "acted in deliberate ignorance of the truth or falsity of" its ineligibility, or "acted in reckless disregard of the truth or falsity of" its ineligibility. *Id.* § 3729(b)(1)(A).

70. False statements by Defendant under this Count were material to the false and fraudulent claims for approval, payment, and forgiveness that Defendant made or caused to be made to the United States or its agents.

71. The United States—unaware of the material falsity of the claims made or caused to be made by Defendant—approved, paid, and participated in payments made by the United States' agents (the financial institutions dispensing loans) for loans that were not permitted under law, and later in loan forgiveness that was not permitted under law.

72. But for Defendant having made and used these materially false statements, the United States and its agents would not have approved, paid, or forgiven Defendant's PPP loan or loans.

73. Because of these false and fraudulent statements that Defendant made, used, or caused to be made or used, the United States has been damaged in an amount of approximately $1,308,474.90.

| | |
|---|---|
| First-draw loan total amount forgiven (including interest) | $618,119.07 |
| First-draw loan processing fee | $18,193.35 |
| Second-draw loan total amount forgiven (including interest) | $652,825.48 |
| Second-draw loan processing fee | $19,377.00 |
| **Total actual damages** | **$1,308,474.90** |

74. The United States is entitled to treble damages plus a civil monetary penalty for each false claim. *See* 31 U.S.C. § 3729(a)(1); 28 C.F.R. § 85.5.

## PRAYER FOR RELIEF

WHEREFORE, Relator prays for judgment against Ramsey Golf and Country Club, Inc. for:

a. Three times the amount of damages that the United States has sustained. Relator calculates that the United States has sustained approximately $1,308,474.90 in actual damages. Relator thus anticipates, at this point in time, that the United States' treble damages are approximately: $3,925,424.70.

b. The maximum civil penalties allowed by law under 31 U.S.C. § 3729(a);

c. An award to Relator for the maximum allowed under 31 U.S.C. § 3730(d);

d. An award to Relator for attorneys' fees, costs, and expenses;

e. Interest as provided by law; and

f. Any other relief that this Court deems appropriate.

**JURY DEMAND**

Relator demands a trial by jury on all claims and issues so triable.

Dated: July 23, 2026

Respectfully submitted,

*/s/ Mark K. Svensson*
Mark K. Svensson (NJ Bar No. 380202021)
**MILBERG, PLLC**
405 East 50th Street
New York, New York 10022
Tel.: (202) 975-0468
msvensson@milberg.com

Philip J. Krzeski (pro hac vice forthcoming)
**CHESTNUT CAMBRONNE PA**
100 Washington Avenue South, Suite 1700
Minneapolis, MN 55401
Phone: (612) 339-7300
Fax: (612) 336-2940
pkrzeski@chestnutcambronne.com

*Attorneys for Relator Black Arrow Strategies LLC*